SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**ELIZA CARMEN RODRIGUEZ, NYSB #5645379**
**ARIN HEINZ, MIB #P80252**
Assistant United States Attorneys
Eliza.Carmen.Rodriguez@usdoj.gov
Arin.Heinz@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000

**ELIZABETH HUTSON, VAB #85763**
Trial Attorney
Human Rights and Special Prosecutions Section
U.S. Department of Justice, Criminal Division
1301 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 532-5578
Elizabeth.Hutson@usdoj.gov

Attorneys for United States of America

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

**UNITED STATES OF AMERICA**

**v.**

**YOLANDITA ANDRE and**
**MARIE GERTRUDE JEAN VALMONT,**

**Defendants.**

**No. 3:24-cr-00353-AN**

**GOVERNMENT'S MOTION TO EXCLUDE DEFENSE EXPERT**

Comes now the United States of America, by its counsel, Scott E. Bradford, United States Attorney for the District of Oregon, through Eliza Carmen Rodriguez and Arin Heinz, Assistant United States Attorneys, and by A. Tysen Duva, Assistant Attorney General, through Elizabeth Hutson, Trial Attorney, and respectfully files this Motion to Exclude Defense Expert Kyrah

Daniels From Testifying at Trial. For the reasons set forth below, the Court should preclude this witness from testifying at trial.

## I. RELEVANT PROCEDURAL BACKGROUND

On September 17, 2024, a federal grand jury returned an indictment charging the defendants Yolandita Andre (Andre) and Marie Gertrude Jean Valmont (Valmont) (collectively, the "defendants"), with one count of conspiracy to commit forced labor, three counts of forced labor for three separate victims, and three counts of benefiting financially from that forced labor of the same three victims from September 2023 through July 2024. ECF 1.

On January 21, 2026, a federal grand jury returned a Superseding Indictment adding charges against Valmont only for violating 18 U.S.C. § 1592 (Document Servitude), against Andre and Valmont separately for their individual violations of 18 U.S.C. § 1035 (False Statements regarding Healthcare Fraud) and against both defendants for violations of 18 U.S.C. § 1349 (Conspiracy to Commit Healthcare Fraud). ECF 52. In the Superseding Indictment, the government merged the three counts of forced labor under § 1589(a) with the three counts of benefitting financially from that forced labor of the same three victims under § 1589(b). ECF 52.

On August 18, 2026, defendant Yolandita Andre filed notice of her intent to call "Professor Kyrah Daniels as an expert witness concerning ancient religions, African American religious traditions, comparative religion, and Black Atlantic religious traditions, including the religious and cultural traditions commonly referred to as Vodou or Voodoo." ECF 86, p. 1.

Trial in this matter is set for January 11, 2027.

## II. ARGUMENT

Federal Rule of Evidence 702—which incorporates the principles of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny—allows "a witness who is qualified as an expert by

knowledge, skill, experience, training, or education" to give opinion testimony if the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "[B]efore admitting expert testimony, the district court must perform a gatekeeping role to ensure that the testimony is both relevant and reliable." *United States v. Valencia-Lopez*, 971 F.3d 891, 897-98 (9th Cir. 2020) (cleaned up and quotation omitted). This gatekeeping duty "applies to all (not just scientific) expert testimony." *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002). Thus, the proponent of any expert testimony must show, by a preponderance of the evidence, that (1) the expert is qualified to render the proffered opinion; (2) the opinion is reliable; and (3) the testimony is helpful to the jury in its function as fact-finder. Fed. R. Evid. 702; *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001). Here, though the government does not dispute that Professor Kyrah Daniels has an impressive and accomplished resume, her opinions are neither reliable nor helpful to the jury. Fed. R. Evid. 702. Therefore, the Court should preclude this witness from testifying at trial.

**A. The Proffered Expert Opinion Is Not Reliable**

First, Professor Daniels' proffered expert opinion is not reliable. To be reliable, an expert's opinion must be "based on sufficient facts or data" to enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation. Fed. R. Evid. 702(b); *see also United States v. Rahm*, 993 F.2d 1405, 1312 (9th Cir. 1993). "To evaluate reliability, the district court must assess the expert's reasoning or methodology, using . . . appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022). This inquiry requires a court to "examine not only the validity of the expert's methodology but also the analytical connection between the application of the expert's proffered theory to the facts at

issue in the case." *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 350 (2d Cir. 2005). "[E]xperts are expected to verify the reliability of the data underlying their conclusions independently instead of simply adopting the representations of an interested party." *Baker v. Firstcom Music*, No. 16-cv-08931, 2017 WL 2676636, at *2 (C.D. Cal. Nov. 3, 2017). A district court has "great latitude" to make reliability determinations in fulfilling its gatekeeping function. *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

In this case, Professor Daniels' opinion is unreliable because it is ***based almost entirely on the self-interested representations of defendant Andre***. According to the defense notice, Professor Daniels has based her opinion that defendant Andre did not have specialized knowledge of or practice Voodoo on a review of the Indictment, a "limited review of discovery to familiarize herself [with] the characters involved in the case," and a single, post-arrest interview with defendant Andre. ECF 86, p. 5. Defendant Andre, of course, is highly motivated to avoid conviction in this case. Professor Daniels interviewed defendant Andre as part of this case, not before defendant Andre was arrested but after she was charged and facing years of imprisonment. Despite this fact, Professor Daniels appears to have wholly accepted defendant Andre's statements as true. Because Professor Daniels' opinion is largely based on the self-serving statements of a highly interested party, her opinion is unreliable and should be excluded under Rule 702. *See Intrex Corp. v. FMC Corp.*, No. 96-16567, 1997 U.S. App. LEXIS 26551, at *1 (9th Cir. 1997) (affirming district court's exclusion of expert report and testimony, in part, because it "could be based on nothing more than the speculation and opinion of an interested party"); *Call Delivery Sys., LLC v. Morgan*, No. 2:20-cv-04637, 2022 WL 1252412 (C.D. Cal. Mar. 7, 2022) (excluding expert testimony as unreliable where expert based his opinion on his communications with self-interested defendant and defense counsel); *Garcia v.*

*Los Banos Unified Sch. Dist.*, No. 1:04-CV-6059SMS, 2007 WL 715526, at *15 (E.D. Cal. Mar. 8, 2007) (excluding testimony where expert "assumed the truth of Plaintiff's representations" and based his opinion on a review of discovery, including deposition testimony, and an interview with plaintiff).

**B. The Proffered Expert Is Not Relevant or Helpful to the Jury**

Second, Professor Daniels' opinions are not relevant and not helpful to the jury. *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1184 (9th Cir. 2002) ("Whether testimony is helpful within the meaning of Rule 702 is in essence a relevancy inquiry."); *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). Pursuant to Rule 702, a witness may testify to scientific, technical, or other specialized knowledge if it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *see also Daubert*, 509 U.S. 579. To be helpful, an expert's testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591; *see also United States v. Williams*, 850 F. App'x 566 (9th Cir. 2021) (affirming district court's exclusion of expert testimony where the expert opinion offered was not sufficiently connected to a factual dispute); *Sherwood v. BNSF Ry. Co.*, No. 2:16-cv-00008, 2019 U.S. Dist. LEXIS 35312, at *10 (D. Idaho Mar. 4, 2019) (excluding expert opinion, noting that "[i]n evaluating relevancy, the court must determine whether there is a link between the expert's testimony and the matter to be proved") (quotation omitted). "Rule 702 'makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance.'" *Jones v. City of Los Angeles*, No. 2:20-cv-11147, 2023 U.S. Dist. LEXIS 46869, at *7 (C.D. Cal. Feb. 24, 2023) (quoting *United States v. Freeman*, 498 F.3d 893, 905 (9th Cir. 2007)).

Here, the defense wishes to offer Professor Daniels' opinion not only about "the nature and characteristics of Vodou/Voodoo and related African, African American, Caribbean, Black Atlantic religious traditions" but also that defendant Andre did not "possess[] specialized knowledge of or practice[] Vodou/Voodoo." ECF 86, p. 3. That is, the defense does not offer Professor Daniels as a blind expert to testify simply about religious traditions and practices. Rather, based on a "limited review of discovery" and an interview with defendant Andre, the defense wishes Professor Daniels to opine on whether defendant Andre had knowledge of or practiced Voodoo. Such opinion testimony is not relevant to the case or helpful to the jury—it has no relevance to the fraud-related charges, and its only conceivable relevance is to the forced labor and conspiracy charges.

To prove a violation of the forced labor statute, 18 U.S.C. § 1589, the government must show that the defendants knowingly provided or obtained the labor or services of another through one of four prohibited means, or any combination thereof, including threats of serious harm or a coercive scheme. *See* 18 U.S.C. § 1589; *United States v. Dann*, 652 F.3d 1160 (9th Cir. 2011). "Serious harm" is defined by 1589 as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589. Similarly, when determining if a defendant's scheme, plan, or pattern compelled a victim, the relevant inquiry is whether the defendant's conduct would intimidate and coerce a reasonable person in the victim's situation to believe that she must remain in the defendant's service. *See* H.R. REP. NO. 106-939, at 101, 2000 WL 1479163 (stating that the TVPA is "intended to be construed with respect to the individual

circumstances," including a victim's "age and background," to determine whether the type and degree of coercion is "sufficient" to maintain or compel that victim into labor or services). The "vulnerabilities of the victim are relevant in determining whether the physical or legal coercion or threats thereof could plausibly have compelled the victim to serve." *United States v. Kozminski*, 487 U.S. 931, 948 (1988) (interpreting 18 U.S.C. § 1584); *see also, e.g.*, *United States v. Veerapol*, 312 F.3d 1128, 1132 (9th Cir. 2002) (finding that victim vulnerabilities, as relevant to both coercion and sentencing, include "immigration status and . . . linguistic, education, and cultural barriers").

As noted in the government's recently-filed bill of particulars (ECF 95), to prove the forced labor and forced labor conspiracy counts at trial, the government intends to introduce evidence that, as part of their coercive scheme, the defendants utilized threats of serious harm by, among many other examples, threatening to curse the victims and their families with voodoo and witchcraft. All three victims are originally from Haiti, where Voodoo is part of the culture and much more commonly known than in the United States. ***In determining whether the defendants' Voodoo threats—combined with their copious other intimidating and abusive conduct—coerced the victims to provide labor, the appropriate inquiry is not whether the defendants could actually carry out their threats using Voodoo, but whether the threats would cause a reasonable person of the same background and in the same circumstances to believe that serious harm would befall them or others if they did not continue to provide labor and services***. *See United States v. Afolabi*, 508 Fed. Appx. 111, 113 (3d Cir. 2013) (upholding forced labor conviction where evidence of the victim's belief in Voodoo and the defendant's abuse of Voodoo added to the defendant's coercive scheme and victim's fear of serious harm); *United States v. Murra*, 879 F.3d 669, 686 (5th Cir. 2018) (affirming forced labor conviction on

sufficiency grounds where the defendant used religion to manipulate and curse the victims and threaten them with eternity in hell); *United States v. Majeed*, No. 21-cr-20060, 2025 WL 1262457 (D. Kan. Apr. 30, 2025) (denying defendants' motions for judgment of acquittal and a new trial where, as part of their coercive scheme, defendants threatened that victims would burn in eternal "hellfire" if they left the religious organization). In fact, because the government does not intend to introduce evidence or argue that defendant Andre possessed specialized knowledge about Voodoo or was capable of carrying out threats practicing Voodoo, ***there is no factual dispute that Professor Daniels' testimony can help resolve***. *See, e.g.*, *Daubert*, 509 U.S. at 591.

Furthermore, the defense does not claim that Professor Daniels will use her expertise to interpret the meaning of the defendants' Voodoo threats; indeed, such expert testimony would be barred by Rule 702. *See Freeman*, 498 F.3d at 905 (finding that "the interpretation of *clear* statements is not permissible, and is barred by the helpfulness requirement of . . . Fed. R. Evid. 702") (emphasis in original) (quotation omitted); *United States v. Wilson*, 484 F.3d 267, 277 (4th Cir. 2007) (finding an expert's interpretation of language was "unhelpful" under Rule 702 when the "actual language needed no translation"). The defense also does not—and cannot—speak to what the victims thought and felt about these threats. Only the victims can and will testify as to the impact these threats had on them.

Finally, it is clear from the defense's expert notice, and the fact that Professor Daniels is not a blind expert, that the defense intends for Professor Daniels to provide an "illegitimate and impermissible substitution of expert opinion for factual evidence." *United States v. Meja*, 545 F.3d 179, 190 (2d Cir. 2008). That is, the defense states that, if qualified, Professor Daniels will opine on whether defendant Andre did or did not practice Voodoo, and did or did not have knowledge of Voodoo, despite never once observing or interacting with defendant Andre outside

the context of this case. Professor Daniels has no foundation to opine on such matters, and any such testimony would exceed the proper scope of expert opinion. *See United States v. Zhong*, 26 F.4th 536, 555-57 (2d Cir. 2022) (overturning forced labor convictions where a not-blind expert impermissibly interpreted factual evidence).

For these reasons, the proffered expert opinion regarding whether defendant Andre actually practiced Voodoo or possessed sufficient knowledge of Voodoo to carry out her threats is not relevant or helpful under Rules 702 or 401 and should be excluded.[1]

## III. CONCLUSION

Because the proffered testimony of defense expert Professor Daniels is not helpful to the jury or reliable, the Court should exclude the expert testimony under Rule 702.

DATED: September 1, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

/s/ Eliza Carmen Rodriguez
ELIZA CARMEN RODRIGUEZ, NYSB # 5645379
Assistant United States Attorney

[1] If the Court denies the government's motion to exclude this defense expert, the government respectfully requests that the Court hold a *Daubert* hearing. The district court plays the role of "gatekeeper" in screening proposed expert testimony to ensure it is both relevant and reliable. *See GE v. Joiner*, 522 U.S. 136, 142 (1997). The Ninth Circuit has stated that "[o]ur caselaw should not be understood to suggest a presumption of admission. There is no such presumption, as a proponent of expert testimony must always establish the admissibility requirements of Rule 702 by a preponderance of the evidence." *Engilis v. Monsanto Co.*, 151 F. 4th 1040, 1050 (9th Cir. 2025) (citations omitted). Only where "the proposed testimony meets the thresholds of relevance and reliability [is] its proponent . . . entitled to have the jury decide upon [its] credibility, rather than the judge." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (quotation omitted). In this case, the defense has not fulfilled each of the requirements of Rule 702 by a preponderance of the evidence. Thus, if the Court declines to exclude the defense's proposed expert based on the briefing, the government respectfully requests that the Court hold a *Daubert* hearing.

*/s/ Arin C. Heinz*
ARIN C. HEINZ, MIB #P80252
Assistant United States Attorney

A. TYSEN DUVA
Assistant Attorney General
Department of Justice
Criminal Division

/s/ *Elizabeth Hutson*
ELIZABETH HUTSON, VAB #85763
Trial Attorney
Human Rights and Special Prosecutions Section